# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

THERESA A. BODO,          )
      Plaintiff,              )
                                )
        v.                 )       CAUSE NO.: 2:17-CV-27-JEM
                                )
NANCY A. BERRYHILL,      )
Acting Commissioner of the     )
Social Security Administration,   )
      Defendant.          )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Theresa A. Bodo on January 23, 2017, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], filed by Plaintiff on June 30, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 8, 2017, the Commissioner filed a response, and on September 20, 2017, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## I.     Background

On July 5, 2013, Plaintiff filed an application for supplemental security income benefits alleging that she was disabled starting on or before her application date. Plaintiff's application was denied initially and upon reconsideration. On May 4, 2015, Administrative Law Judge ("ALJ") Michael Carr held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On May 18, 2015, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

    1.     The claimant did not engage in substantial gainful activity during the period from her application date of July 5, 2013 through the date of the ALJ's decision.

2. The claimant had the severe impairments of anxiety, borderline intellectual functioning, dysthymic disorder, and degenerative disc disease of the thoraco-lumbar and cervical spine.

3. The claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1.

4. The claimant had the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, to stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday, to push/pull as much as she can lift/carry; to frequently balance, stoop, kneel, crouch, and crawl; and to frequently climb ramps and stairs and occasionally climb ladders, ropes, or scaffolds. With regard to understanding, remembering, and carrying out instructions, she was limited to performing simple, routine, and repetitive task (due to intellectual problems) and, with regard to both using judgment and dealing with changes in work setting, the claimant she was limited to simple work-related decisions. In terms of the ability to respond appropriately to supervision, coworkers, and work situations, she could tolerate occasional contact with supervisors, coworkers, and the general public.

5. The claimant had no past relevant work.

6. The claimant was a younger individual age 18-49 on the date she filed her application.

7. The claimant had a limited education and was able to communicate in English.

8. Transferability of job skills was not material because the claimant had no past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform.

10. The claimant was not under a disability, as defined in the Social Security Act, from her application date to the date of the ALJ's decision.

On November 29, 2016, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.    Facts

Plaintiff, who was 37 years old at the time of the ALJ's decision, has borderline intellectual functioning. Her Full-Scale IQ score is 75, placing her at the 5th percentile of adults her age. The psychologist who examined her noted that she often had problems expressing herself, and opined that her "below average intellectual functioning. . . has contributed to interpersonal and occupational disadvantage." The psychologist also described Plaintiff as prone to "anxiety-type worry" contributing to a "chronically depressed mood." AR 333-336.

Plaintiff also has a history of pain in her back, neck, shoulders, and hips, which she attributes to trauma sustained in motor vehicle collisions and incidents of domestic violence. On August 23, 2013, Plaintiff had a series of MRI exams of her spine. AR 364-367. The MRI of her cervical spine revealed severe neuroforaminal stenosis on the left side at the C4-C5 level and moderate to severe neuroforaminal stenosis with slight cord compression at the C6-C7 level. Her scans were also positive for other findings, including two syrinxes (abnormal fluid-filled cavities in the spinal cord), one near the C6 level and another at the T6-T7 level of her spine.

## III.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse

only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must

"'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.    Analysis

Plaintiff argues that the ALJ erred in evaluating Plaintiff's RFC because he failed to consider significant evidence contrary to his conclusion, did not provide an evidentiary basis for his conclusions, and did not adequately explain why a number of Plaintiff's alleged limitations were rejected. The Commissioner argues that the ALJ properly evaluated Plaintiff's complaints.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

The ALJ rejected the opinions of the state agency medical consultants who found that Plaintiff had no severe physical impairments, because those doctors "did not have the benefit of reviewing the entire record," including the MRI reports dated August 23, 2013, and of hearing Plaintiff's testimony. With no other doctor's opinion to consider, the ALJ based his assessment of Plaintiff's RFC on his own review of her later-submitted medical record and his assessment of her credibility. He summarized various X-ray, MRI, and physical exam evidence and characterized the overall physical findings as "rather benign." In coming to this conclusion, the ALJ did not explain how, in the absence of any medical source opinion on the matter, he determined that the severe neuroforaminal stenosis with evidence of cord compression in Plaintiff's cervical spine, together syrinxes at the cervical and thoracic levels, constituted "benign" findings in Plaintiff's MRI scans. The Seventh Circuit Court of Appeals has repeatedly warned ALJ's not to make their own independent medical findings, cautioning that "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases); *see also, Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"). Plaintiff's own doctors believed her symptoms were serious enough to warrant treatments including injections and narcotic pain medications. If the record contained insufficient medical information for the ALJ to reach a supported conclusion, he had a duty to obtain additional information. *See Barnett,* 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (reminding that an "ALJ has a duty to develop a full and fair record [and] [f]ailure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence").

With no medical opinion from a doctor who had reviewed the entire record, the ALJ relied heavily on his assessment of Plaintiff's truthfulness in reporting her symptoms in order to discount her claimed symptoms, including pain and difficulty sitting or standing for extended periods. However, his credibility analysis is flawed. The ALJ found that Plaintiff's allegations of pain were not credible because she did not pursue medical care while she was uninsured. When considering non-compliance with or failure to seek additional treatment as a factor in determining whether a claimant is impaired, an ALJ is required to make a determination about the claimant's reasons for not seeking treatment and to develop the record accordingly. *See Thomas v. Colvin*, 826 F.3d. 953, 961 (7th Cir. 2016) ("[T]he ALJ concluded from [the plaintiff]'s gap in treatment . . . that her symptoms were not as severe as she alleged, but, as noted, he did not explore her reasons for not seeking treatment, another error."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quotation omitted). "Good reasons" for not seeking medical care may include "an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012).

At the hearing in this case, the ALJ did question Plaintiff about her statement that she could not afford further medical care, asking if she had "looked at alternatives" to paid care. AR 57-61. Plaintiff testified that the government-run clinic "wants 20 to $65" or a visit, which she could not afford. She also explained that she "tried to get HIP" [Healthy Indiana Plan] but had lost her Medicaid eligibility because she "forgot to sign a paper." Upon further questioning about efforts to remedy that, Plaintiff stated, "I tried to get the Medicaid to help me, keep sending paperwork to

them." She later added that recent HIP application had again been denied. It is undisputed that Plaintiff's intellectual functioning is at the borderline level. The examining psychologist, Todd Snyder Psy.D., opined that due to Plaintiff's intellectual impairment she was incapable of handling her own funds. AR 333-335. Nevertheless, Plaintiff appears to have made considerable efforts to obtain health insurance, first through Medicaid and then through Healthy Indiana Plan, despite her intellectual impairment. The ALJ did not acknowledge those efforts and instead dismissed her allegations that she could not afford treatment as follows:

> The claimant has indicated she cannot afford treatment or medication. . . However . . . if her impairments were truly as limiting as she suggests, the undersigned would expect her to seek out alternative, less expensive treatment methods, or any free medical services, that may be available in her community. Furthermore, despite her apparent lack of funds, the claimant has been able to maintain an up to two pack a day smoking habit. As such, the undersigned finds the claimant's allegations regarding the limiting effects of her impairments are not entirely credible.

The ALJ does not identify what "less expensive treatment methods" or "free medical services" exist in Plaintiff's community, other than the government-run clinic she stated she cannot afford or the state-run insurance program in which she was unsuccessful in enrolling. Furthermore, the reference to Plaintiff's smoking habit does nothing to further the ALJ's analysis. The ALJ points to no evidence indicating that Plaintiff, who has no reported source of income, purchases her cigarettes herself, how much they cost, or whether that cost is indeed less than the cost of available medical care. *See Eskew v. Astrue*, 462 Fed.Appx. 613, 616 (7th Cir. 2011) (finding no logical bridge where the ALJ dismissed the assertion that the plaintiff could not afford her medication because the plaintiff could afford cigarettes where there was no evidence of the cost of either). More to the point, the ALJ's use of Plaintiff's smoking to impugn her credibility contravenes applicable law and

common sense. The Seventh Circuit recognizes "the addictive nature of smoking" and has made it clear that an ALJ should not focus on a claimant's failure to quit smoking when determining if the claimant has been compliant with medical treatment. *Shramek v. Apfel,* 226 F.3d 809, 813 (7th Cir. 2000).

Another concerning characteristic of the ALJ's opinion is that he appears to have drawn his conclusions prior to weighing the evidence. He stated that the reports of the psychological consultants were given "substantial evidentiary weight to the extent they are consistent with the findings herein," and that the reports of Plaintiff's father and friend were given "some consideration and weight to the extent they indicate the claimant is not disabled." As Plaintiff points out, this method of analysis risks turning the review process on its head: the ALJ's job is to weigh the evidence then draw conclusions from it, not to arrive at conclusions then weigh the evidence based on how closely it hews to those conclusions. An ALJ "must 'consider the entire case record and give specific reasons for the weight given to the individual's statements.'" *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) (quoting *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009)). The ALJ need not believe every piece of testimony offered, but he must explain which parts he accepts and rejects so that the Court may trace the path of his reasoning from the evidence to his conclusions.

The ALJ's rejection of the only physical medical opinions of record coupled with the flaws his own analysis of the medical evidence and in his assessment of Plaintiff's credibility leave the Court unable to determine what substantial evidence remains to support the ALJ's conclusions. *See Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation

is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

On remand, the ALJ is reminded of the need to thoroughly analyze the medical evidence, to supplement that evidence with updated medical opinion evidence if necessary, and to analyze Plaintiff's credibility in accordance with applicable law.

## IV.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 20th day of March, 2018.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record